IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GERALD SULLIVAN,<br>    Plaintiff,<br>v.<br>WILLIAM GOODWIN; and<br>HEARTLAND SPORT CARDS AND<br>MEMORABILIA, LLC,<br>    Defendants. | Case No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Gerald Sullivan ("Sullivan") files this action against William Goodwin ("Goodwin") and Heartland Sport Cards and Memorabilia, LLC ("Heartland") (together, "Defendants"). In support of his claims, Sullivan alleges the following:

### PARTIES

1. Sullivan is an individual who resides in Bowling Green, Kentucky.

2. Goodwin is an individual who resides in St. Louis County, Missouri.

3. Heartland Sport Cards and Memorabilia, LLC is a limited liability corporation organized under the laws of the State of Missouri with its principal place of business located within St. Louis County, Missouri.

### JURISDICTION AND VENUE

4. The Court has subject-matter jurisdiction over Sullivan's claims pursuant to 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000 and there exists complete diversity of citizenship.

1

5. Sullivan is a citizen of the Commonwealth of Kentucky. He is a longtime resident of Bowling Green, Kentucky; owns property within the State of Kentucky; and intends to remain in Kentucky.

6. Goodwin is a citizen of the State of Missouri. He is a longtime resident of St. Louis County, Missouri; owns real property within the State of Missouri; and conducts extensive business operations within the State of Missouri.

7. Heartland is a citizen of the State of Missouri. On information and belief, the sole member of Heartland is Goodwin, who is a citizen of the State of Missouri.

8. Personal jurisdiction is proper, because both Defendants are both citizens of Missouri and because all or substantially all of Defendants' conduct relevant to this action occurred within St. Louis County, Missouri.

9. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1), because Goodwin resides within St. Louis County, Missouri, and because Heartland maintains its principal place of business within St. Louis County, Missouri.

10. In addition, venue is proper in this judicial district under 20 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred within St. Louis County, Missouri.

**FACTS COMMON TO ALL COUNTS**

11. For many years, Goodwin has operated an auction service through which he auctions off sports cards and other sports memorabilia.

12. On information and belief, Goodwin currently offers those services wholly or principally though Heartland.

13. On information and belief, Goodwin and Heartland ordinarily receive cards and other memorabilia on consignment. They then conduct a public auction (usually online) for the cards or memorabilia.

14. The expectation of consignors and purchasers is that, if the cards or memorabilia are sold through auction, then Goodwin and Heartland will transmit the cards or memorabilia to the purchaser, and they will transmit the auction proceeds to the consignor, deducting only a commission and other fees that are agreed upon in advance.

15. Sullivan is a longtime collector of baseball cards.

16. As relevant to this case, Sullivan owned at least 33 baseball cards (the "Cards") that he desired to sell.

17. Many of the Cards are highly valuable, including vintage cards of baseball legends Jackie Robinson, Sandy Koufax, Mickey Mantle, Ty Cobb, Honus Wagner, and Babe Ruth.

18. In order to sell the Cards, Sullivan consigned the Cards to Goodwin and Heartland.

19. Sullivan executed a Consignment Agreement with Heartland. A true and accurate copy of that Consignment Agreement is attached as Exhibit 1 hereto and is incorporated by reference herein.

20. Among other things, the Consignment Agreement states that, "provided [Heartland] receive payment form [sic] the Buyer, within forty-five (45) days after the end of the Auction, [Heartland] will remit to [Sullivan] the Net Proceeds for the Memorabilia. The 'Net Proceeds' consist of the amount of the total proceeds collected, less the commission, Buyer's Premium, and any such expenses." *Id*. at ¶ 6.

21. Goodwin executed the Consignment Agreement on behalf of Heartland on or about May 11, 2021.

22. On information and belief, Goodwin and Heartland successfully sold the Cards through auction and received the promised auction prices from the buyers of the Cards.

23. On information and belief, the auctions of the Cards closed on or about July 21, 2021.

24. After removing commissions and other fees authorized by the Consignment Agreement, Sullivan was entitled to at least $250,000 in proceeds from the sale of the Cards.

25. Under the Consignment Agreement, Goodwin and Heartland were obligated to pay this $250,000 amount to Sullivan by September 4, 2021.

26. Goodwin and Heartland did not and have not made the required payments under the Consignment Agreement, and their obligation to pay $250,000 to Sullivan remains outstanding.

27. Since September 4, 2021, Goodwin has acknowledged multiple times in writing and by phone that he and Heartland owe at least $250,000 to Sullivan.

28. On multiple occasions since September 4, 2021, Goodwin has promised to fulfil his and Heartland's obligation to pay the $250,000 to Sullivan. He has not followed through on those promises.

29. Sullivan—both individually and through counsel—has made numerous attempts to obtain payment from Goodwin without resorting to litigation, but without success.

30. During the parties' pre-litigation discussions, Goodwin and Heartland agreed to enter into a Promissory Note in exchange for Sullivan not exercising his legal rights against Goodwin and Heartland before December 15, 2021. A true and accurate copy of that Promissory Note is attached as Exhibit 2 hereto and is incorporated by reference herein.

31. Goodwin signed the Promissory Note on or about November 17, 2021.

32. Pursuant to the Promissory Note, Goodwin and Heartland agreed to make three payments:

   a. They agreed to pay $10,000 to Sullivan by November 23, 2021;

   b. They agreed to pay $250,000 to Sullivan by December 15, 2021; and

   c. They agreed to pay $6,000 to Husch Blackwell LLP by December 15, 2021, to cover legal fees that Sullivan had incurred attempting to collect the amounts owed to him by Goodwin and Heartland.

33. Goodwin and/or Heartland paid $10,000 to Sullivan on November 23, 2021.

34. However, neither Goodwin nor Heartland paid the remaining $256,000 due under the Promissory Note.

35. This failure to pay constitutes default under the Promissory Note and entitles Sullivan to immediate payment of all amounts due under the Promissory Note.

## COUNT I: BREACH OF PROMISSORY NOTE
## AGAINST GOODWIN AND HEARTLAND

36. Plaintiff realleges and incorporates by reference paragraphs 1 through 35 as if fully stated herein.

37. As described above, a payment of $250,000.00 was due to Sullivan as on December 15, 2021 under the terms of the Promissory Note.

38. Neither Goodwin nor Heartland made that payment.

39. As described above, a payment of $6,000.00 was due to be paid to Husch Blackwell LLP on December 15, 2021 under the terms of the Promissory Note to pay Sullivan's legal fees.

40. Neither Goodwin nor Heartland made that payment.

41. As a result, Goodwin and Heartland are in default under the Promissory Note, and $256,000 in principal is due and owing to Sullivan under the Promissory Note.

42. In addition, pursuant to the Promissory Note, interest is now accruing on that unpaid principal at a rate of 15% per annum or the highest rate permitted by law, whichever is lower.

43. The Promissory Note expressly provides that, in the event that Goodwin and Heartland fail to make any payment due under the Note when due, Sullivan is entitled to declare the outstanding amount immediately due and payable without notice to or demand upon the Payor.

44. On December 16, 2021, counsel for Sullivan provided written notice to Goodwin and Heartland that Sullivan had deemed them to be in default and demanding full payment of all amounts due under the Promissory Note.

45. Neither Goodwin nor Heartland has responded to that demand, nor have they paid the amounts outstanding under the Promissory Note.

WHEREFORE, Sullivan seeks a judgment against Goodwin and Heartland in the amount of $256,000, along with the interest prescribed by the Promissory Note, as well as all other available pre-judgment and post-judgment interest; an award of Sullivan's costs and attorneys' fee; and such further relief as the Court deems just and proper.

### COUNT II: BREACH OF CONTRACT
### AGAINST HEARTLAND

46. Plaintiff realleges and incorporates by reference paragraphs 1 through 45 as if fully stated herein.

47. As described above, Heartland and Sullivan entered into a Consignment Agreement on or about May 11, 2021.

48. Pursuant to the Consignment Agreement, Sullivan consigned the Cards to Heartland so that Heartland could auction the Cards and thereby earn a commission and certain other fees.

49. The Consignment Agreement required Heartland to remit the net proceeds of the sale of the Cards to Sullivan within forty-five days of the auction.

50. Sullivan performed all obligations and duties imposed upon him by the Consignment Agreement.

51. Under the terms of the Consignment Agreement, Heartland was obligated to remit $250,000 to Sullivan by September 4, 2021.

52. Heartland did not make the required payment to Sullivan and thereby breached material terms of the Consignment Agreement.

53. As a result of this breach, Sullivan has been harmed in an amount equal to at least $250,000.

WHEREFORE, Sullivan seeks a judgment against Heartland Sports for actual damages; pre-judgment and post-judgment interest; and such further relief as the Court deems just and proper.

## COUNT III: FRAUD
## AGAINST GOODWIN AND HEARTLAND

54. Plaintiff realleges and incorporates by reference paragraphs 1 through 53 as if fully stated herein.

55. Goodwin and Heartland represented to Sullivan that they would auction the Cards and remit to Sullivan a certain portion of the sales proceeds within a prescribed amount of time after the close of the auction.

56. Sullivan believed that those representations were accurate and made in good faith, and he had no reason to doubt their accuracy.

57. In reliance on those representations, Sullivan transferred custody of the Cards to Goodwin and Heartland.

58. Sullivan's reliance on those representations was reasonable.

59. Goodwin and Heartland made those representations to Sullivan precisely in order to induce him to transfer custody of the Cards to them.

60. Goodwin and Heartland's representations were false in every material respect.

61. On information and belief, Goodwin and Heartland did not intend to fulfill any of their promises at the time those promises were made to Sullivan.

62. As a direct and proximate result of Goodwin and Heartland's misrepresentations, Sullivan has lost the Cards, which have an aggregate fair market value in excess of $250,000, as reflected by the auction prices at which the Cards sold.

WHEREFORE, Sullivan seeks a judgment against Goodwin and Heartland Sports for actual damages; punitive damages; and such further relief as the Court deems just and proper.

**COUNT IV: VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT ("MMPA")
AGAINST GOODWIN AND HEARTLAND**

63. Plaintiff realleges and incorporates by reference paragraphs 1 through 62 as if fully stated herein.

64. Sullivan entered into a Consignment Agreement with Defendants for their consignment services, in particular, consignment services auctioning baseball cards.

65. Sullivan entered into the Consignment Agreement for a personal purpose, *i.e.*, to auction certain baseball cards.

66. Defendants successfully auctioned Sullivan's baseball cards for more than $250,000.

67. Defendants have refused to remit to Sullivan at least $250,000 due to Sullivan from the sales proceeds of the Cards.

68. Defendants have employed deceptive, fraudulent, unfair, and otherwise unlawful practices in connection with their transaction with Sullivan.

WHEREFORE, Sullivan seeks a judgment against Goodwin and Heartland Sports for actual damages; attorneys' fees; punitive damages; and such further relief as the Court deems just and proper.

## COUNT V: UNJUST ENRICHMENT
## AGAINST GOODWIN AND HEARTLAND

69. Pleading in the alternative, Plaintiff realleges and incorporates by reference paragraphs 1 through 68 as if fully stated herein.

70. Sullivan directly conferred a benefit on Defendants by providing the Cards to Defendants for consignment sale at auction.

71. Sullivan provided the Cards to Goodwin and Heartland with the expectation that Sullivan would receive a certain portion of the auction proceeds.

72. Defendants sold the Cards for a total of more than $250,000, and they have retained the total sales proceeds for themselves, without paying to Sullivan the amounts to which he is entitled.

73. It would be inequitable and unjust for Defendants to retain the entirety of the auction proceeds.

WHEREFORE, Sullivan seeks compensatory relief; a constructive trust against Goodwin and Heartland; and such further relief as the Court deems just and proper.

Respectfully submitted,

HUSCH BLACKWELL, LLP

*/s/ Michael Martinich-Sauter*
Michael Martinich-Sauter, 66065MO
190 Carondelet Plaza, Suite 600
St. Louis, Missouri  63105
T: 314.480.1500 / F: 314.480.1505
michael.martinich-sauter@huschblackwell.com